**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE:  GARRETT L. NECAISE | CASE NO. 11-52718-KMS |
|        & CYNTHIA A. NECAISE | |
| DEBTORS | CHAPTER 7 |
| | |
| THE ESTATE OF MILDRED R. NECAISE, DECEASED | |
| THROUGH ADMINISTRATOR, JOHN G. MCDONNELL, ESQ.; | |
| GARLAND JOSEPH NECAISE; | |
| AND GARRIE PATRICK NECAISE | PLAINTIFFS |
| V. | ADV. PRO. NO. 12-05011-KMS |
| GARRETT LYNN NECAISE | |
| AND CYNTHIA A. NECAISE | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court on the Motion for Summary Judgment on Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2), (4) and (6) ("Motion") (Adv. Dkt. No. 12)[1] filed by The Estate of Mildred R. Necaise, deceased through administrator, John G. McDonnell, Esq.; Garland Joseph Necaise; and Garrie Patrick Necaise (collectively the "Plaintiffs"), the Defendants' Response to Plaintiffs' Motion for Summary Judgment (Adv. Dkt. No. 28) filed by Garrett L. Necaise and Cynthia A. Necaise, the Brief in Support of Debtors' Response to Plaintiffs' Motion for Summary Judgment (Adv. Dkt. No. 29) filed by the Defendants, the Plaintiffs' Reply Brief (Adv. Dkt. No. 30), Plaintiffs' Exhibits and Authorities for Reply Brief (Adv. Dkt. Nos. 31-33), and the Letter with Exhibits (Adv. Dkt. No. 34) filed by

---

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 12-05011-KMS, are cited as "(Adv. Dkt. No. ___)"; and (2) citations to docket entries in the main bankruptcy case, Case No. 11-52718-KMS, are cited as "(Dkt. No. ___)".

Plaintiffs. William P. Wessler represents Plaintiffs and Jason Graeber represents Defendants Garrett and Cynthia Necaise.

This matter concerns the dischargeability of Plaintiffs' state court judgment against Debtors.[2] The Chancery Court determined that Debtors received money and property as a result of undue influence that they exercised over Mildred Necaise, Garrett Necaise's mother. Plaintiffs assert that they are entitled to summary judgment on the basis of collateral estoppel. Having considered the pleadings, exhibits attached thereto and the record, the Court finds that Plaintiffs' Motion should be granted in part and denied in part for the reasons that follow.[3]

## JURISDICTION

The Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 152(b)(2)(A), (I) and (O).

## FACTS[4]

On November 22, 2011, Garrett and Cynthia Necaise (collectively the "Debtors") filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code.[5] (Dkt. No. 1). In their schedules, Debtors listed the Estate of Mildred Necaise, Gabriel Necaise, Garrie P. Necaise

---

[2] The state court judgment at issue was not appealed and is a final judgment.

[3] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable by Fed. R. Bankr. P. 7052. This Court's decision does not impact the jurisdiction of the Chancery Court to administer the decedent's estate of Mildred Necaise or to dispose of any of her property.

[4] The following facts are derived, for the most part, from the docket and are not disputed.

[5] "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code. All Code sections hereinafter will refer to the Bankruptcy Code unless specifically noted otherwise.

and Garland Necaise as creditors, each with a claim designated as "pending lawsuit." (Dkt. No. 3, at 14-15).[6] On March 9, 2012, the Plaintiffs filed an adversary complaint seeking to have their individual claims arising from a will contest in Harrison County Chancery Court ("Chancery Court") declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (4) and (6).[7] (Adv. Dkt. No. 1). On July 11, 2012, Plaintiffs filed a motion for summary judgment alleging that the factual findings of undue influence in the Chancery Court judgment equate to a finding that Defendants engaged in wrongful, illegal and/or fraudulent conduct such that their claims "constitute non-dischargeable claim[s] under at least one if not all subsections cited in the complaint . . ." and that issue preclusion should bar re-litigation.[8] (Motion, at 7). Ruling on the Motion was stayed to allow the parties to conduct discovery. Discovery is complete and the matter is ready to be decided.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure[9] is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party

---

[6] Garrett Necaise is the son of decedent Mildred Necaise and Cynthia Necaise is her daughter-in-law. Gabriel Necaise, Garrie Necaise and Garland Necaise are siblings of Garrett Necaise and children of Mildred Neicase. (Adv. Dkt. No. 28-4, at ¶¶ 2-3). Gabriel Necaise joined the Plaintiffs in the Chancery Court (will contest) action but did not join in this adversary proceeding.

[7] In their Reply Brief, Plaintiffs abandoned their alleged claim under § 523(a)(4) for purposes of the Motion. (Adv. Dkt. No. 30, at 1-2). Therefore, summary judgment is denied as to this claim.

[8] Plaintiffs acknowledge that the Chancellor did not expressly find that Debtors' conduct "would make the Chancery Court judgment non-dischargeable in a bankruptcy case . . ." but assert that the underlying factual findings support a finding of non-dischargeability. (Motion ¶ VIII).

[9] Rule 56 is made applicable through Rule 7056 of the Federal Rules of Bankruptcy Procedure.

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[O]nce the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (internal citations omitted). Summary judgment is "proper if the party opposing the motion fails to establish an essential element of his case." *Bradley v. Allstate Ins. Co.*, 606 F.3d 215, 222 (5th Cir. 2010) (*quoting Celotex*, 477 U.S. 317, 322-23 (1986).

## II.   Issue Preclusion/Collateral Estoppel & Rooker-Feldman Doctrine

Plaintiffs maintain that there are no genuine issues of material fact because the issues were decided in the Chancery Court proceedings. As a result, Plaintiffs assert that this Court is bound by the Chancery Court's judgment on the basis of collateral estoppel. Under Mississippi law, the doctrine of collateral estoppel precludes re-litigation of a specific issue that was (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action. *Am. Casualty Co. v. United S. Bank*, 950 F.2d 250, 253 (5th Cir. 1992) (*citing Dunaway v. W.H. Hopper & Assocs., Inc.* 422 So. 2d 749, 751 (Miss. 1982). The Fifth Circuit has instructed that "collateral estoppel applies in bankruptcy dischargeability proceedings, but the bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable." *Desper v. Desper (In re Desper)*, Adv. No. 09-05051-NPO, 2010 WL 653864, at *4 (Bankr. S.D. Miss. Feb. 9, 2010) (*quoting Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1028 (5th Cir. 1998). The Fifth Circuit has further elaborated that issue preclusion "applies in bankruptcy court only if, *inter alia*, the first court has made specific, subordinate, factual

findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from the court's record." *In re Keaty*, 397 F.3d 264 (5th Cir. 2005) (*citing Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994)). In order to establish collateral estoppel in this adversary proceeding, the Court must determine that the requisite elements of the dischargeability claim were decided by the Chancery Court.

Plaintiffs also assert that the Rooker-Feldman doctrine bars this Court from reviewing the Chancery Court judgment. "The Rooker-Feldman doctrine provides that lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions." *In re Shankle*, 476 B.R. 908, 912 (Bankr. N.D. Miss. 2012) (discussing origins of Rooker-Feldman doctrine). Consequently, this Court can only determine whether the actions of one or both Debtors in procuring a will for the decedent, procuring a change in the decedent's life insurance policy beneficiaries, establishing a joint bank account with the decedent, and procuring a deed, all of which would have deprived one or more of the Plaintiffs of an inheritance, constitute a non-dischargeable debt in the Debtors' bankruptcy case.

### III. § 523(a)(2)

Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A); *Norris v. First Nat'l Bank in Luling (In re Norris)*, 70 F.3d 27, 29 (5th Cir. 1995). "Section 523(a)(2)(A) encompasses three similar grounds for non-dischargeability, all of which apply to 'debts obtained by frauds involving moral turpitude or intentional wrong.'" *Lanier v. Futch (In re Futch)*, Adv. No. 09-00144-NPO, 2011

WL 576071, at *17 (Bankr. S.D. Miss. Fed. 4, 2011) (citing *First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 813 (5th Cir. 1992)).

Under § 523(a)(2)(A), a representation made by a debtor is a false pretense or false representation if it was: (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party. *In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995). In contrast with false pretense or false representation, a party objecting to discharge of a debt under § 523(a)(2)(A) for actual fraud must demonstrate that: (1) the debtor made representations; (2) the debtor knew the representations were false at the time they were made; (3) the representations were made with the intention and purpose to deceive the creditor; (4) the creditor actually and justifiably relied on the representations; and (5) the creditor sustained a loss as a proximate result of its reliance. *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 373 (5th Cir. 2005) (*citing In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)); *see In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991) (discussing actual fraud under § 523(a)(2)(A) as explained in *In re Roeder*, 61 B.R. 179 (Bankr. W.D. Ky. 1986)); *E. H. Mitchell & Co. v. Alonzo (In re Alonzo)*, Adv. No. 10-1044, 2011 WL 3586123, at *3 (Bankr. E.D. La. Aug. 12, 2011). The reliance requirement of § 523(a)(2)(A) requires justifiable, not reasonable, reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Determining whether reliance is justified is a subjective inquiry that depends on the particular plaintiff and circumstances. *In re Alonzo*, 2011 WL 3586123, at *4.

The Chancery Court judgment is devoid of any findings that the Debtors made any false representations to Mildred Neicase that were justifiably relied upon (if such representations were made) by her in signing the will, transferring the deed to Debtors, adding Debtor Garrett Necaise as signatory on the checking account and changing the beneficiary one or more the life insurance

policies to Garrett. Nor were there any findings regarding any representations made by the Debtors to Plaintiffs Garland Necaise and/or Garrie Necaise. Moreover, fraud was alleged in the Chancery Court action; however, the Chancellor did not make any specific findings of fraud.[10] *See In re Estate of Vick*, 557 So. 2d 760, 767 (Miss. 1989) (*discussing* distinctions between fraud and undue influence; a finding of "undue influence need not involve the use of false and fraudulent representations or untrue statements"). The Chancery Court judgment is insufficient to establish the elements of § 523(a)(2)(A); therefore, summary judgment should be denied as it relates to this claim.

**IV.  § 523(a)(6)**

In order to render a pre-petition debt non-dischargeable under § 523(a)(6), a plaintiff must establish three elements: (1) injury by the debtor; (2) to another (or property of another); and (3) such injury was willful and malicious. *Whitney Nat'l Bank, Successor via Merger with Parish Nat'l Bank v. Phillips*, Adv. No. 09-00033-NPO, 2010 WL 5093388, at *6 (Bankr. S.D. Miss. Dec. 8, 2010) (discussing standards for non-dischargeability under § 523(a)(6)). The Fifth Circuit has articulated the standard for non-dischargeability under § 523(a)(6), concluding that "an injury is 'willful and malicious' where there is an either an objective substantial certainty of harm or a subjective motive to cause harm." *Id. (quoting Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998)); *see also Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 629 (5th Cir. 2012). The Fifth Circuit has further elaborated that "for an injury to be 'willful and malicious' it must satisfy our two-part test *and* not be sufficiently justified under the circumstances to render it not 'willful and malicious.'" *Mann Bracken, LLP v. Powers*, 421 B.R. 326, 332 (Bankr. W.D. Tex. 2009) (discussing the history of § 523(a)(6) in the

---

[10] *Compare* Amended Caveat and Petition to Contest Validity of Will, (Adv. Dkt. No. 21, at ¶ 7) (asserting that will "was product of undue influence, fraud and/or mental distress) *with* Judgment Nunc Pro Tunc, (Adv. Dkt. No. 28-4) (finding undue influence only; word "fraud" does not appear in judgment).

5th Circuit and *citing Berry v. Vollbracht*, 276 F. App'x. 360, 361-62 (5th Cir. 2007)). If the debtors' actions were at least substantially certain to result in injury to plaintiffs, then the debt is non-dischargeable under §523(a)(6). *See Miller*, 156 F.3d at 604.

The Chancellor did not make any findings of a subjective motive to cause harm to Plaintiffs. This Court was not provided with the transcript from the Chancery Court trial—no such transcript exists—to determine whether there was any evidence presented showing a subjective motive or intent to harm Plaintiffs. Moreover, under Mississippi case law, a finding of "undue influence" does not require any specific motive or intent.[11] However, Debtors'

---

[11] The Mississippi Supreme Court articulated the standards of undue influence in *Wright v. Roberts*, 797 So. 2d 992, 998-99 (Miss. 2001) as follows:

> The law in this state on fiduciary or confidential relationships and undue influence is well settled. Its application has been made to both *inter vivos* and testamentary transactions. With both gifts testamentary and gifts *inter vivos*, once the presumption of undue influence has been established, the burden of proof shifts to the beneficiary/grantee to show by clear and convincing evidence that the gift was not the product of undue influence.
>
> * * * *
>
> This Court has enumerated several factors to consider in determining whether a confidential relationship exists:
>
> (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.
>
> * * * *
>
> Although the mere existence of confidential relations between a testator and a beneficiary under his will does not raise a presumption that the beneficiary exercised undue influence over the testator, as it does with gifts *inter vivos,* such consequence follows where the beneficiary 'has been actively concerned in some way with the preparation or execution of the will, or where the relationship is coupled with some suspicious circumstances, such as mental infirmity of the testator;' or where the beneficiary in the confidential relation was active directly in preparing the will or procuring its execution, and obtained under it a substantial benefit.
>
> Furthermore, when there is a fiduciary or confidential relation, and there is a gift or conveyance of dubious consideration from the subservient to the dominant party, it is presumed void. ***This is not because it is certain the transaction was unfair; to the contrary, it is because the Court cannot be certain it was fair***.
>
> Given the finding that a confidential relationship does exist between beneficiary and the testatrix and that the beneficiary has been actively concerned in some way with the preparation or

conduct could still be 'willful' if their acts were substantially certain to result in injury to Plaintiffs under the objective standard. *See Miller*, 156 F.3d at 604.

The Chancellor held that there was not only a confidential relationship and presumption of undue influence, but "there was in fact undue influence" regarding preparation of the Will, execution of a power of attorney, execution of a deed transferring real property, establishing joint bank accounts and changing life insurance beneficiaries.[12] (Adv. Dkt. No. 28-4, at ¶ 21). From this language, it appears that, aside from the presumption of undue influence that arose from the existence of a confidential relationship, the Chancellor found undue influence under the traditional undue influence doctrine.[13] The Chancellor based his ruling on Debtors' failure to

---

> execution of the will, the law raises a presumption that the beneficiary exercised undue influence over the testatrix, and casts upon the beneficiary the burden of disproving undue influence by clear and convincing evidence.
>
> Once the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of: (1) good faith on the part of the grantee/beneficiary; (2) grantor's/testator's full knowledge and deliberation of his actions and their consequences; and (3) independent consent and action by the grantor/testator.

*Wright v. Roberts*, 797 So. 2d 992, 998-99 (Miss. 2001) (emphasis added) (internal punctuation and citations omitted).

[12] The Chancellor found a confidential relationship between the Debtors and decedent Mildred Necaise such that a presumption of undue influence arose under Mississippi law, rebuttable by clear and convincing evidence. (Adv. Dkt. No. 28-4, at ¶ 12). Specifically, the Chancellor found a presumption of undue influence relating "not only to the preparation and creation of the Will by Mildred R. Necaise, but also in the Deed transferring her property to Garrett and Cynthia Necaise and in the establishment of joint bank accounts between Mildred R. Necaise and Garrett Necaise." *Id.* at ¶ 13. The court further ultimately held "that there was undue influence regarding: the preparation of the Will, execution of the Deed transferring Decedent's real property, the execution of the Power of Attorney, the joint bank accounts, and the changing of Decedent's life insurance beneficiaries, and other inter vivos gifts that may have been given to Garrett or Cynthia Necaise . . . ." *Id.* at ¶ 22.

[13] Mississippi courts have recognized that influence is not necessarily 'undue' unless it is so demanding and persistent that it operates to destroy the testator's free agency. Under the traditional doctrine of undue influence, in the case of a will, the proponent of the will carries the burden of offering proof of testamentary capacity and due execution to establish a prima facie case for the validity of the will. *In re Estate of Pigg*, 877 So. 2d 406, 411 (Miss. Ct. App. 2003). The party contesting the will must then present proof that the testator was unduly influenced. As the Mississippi Court of Appeals has noted:

> A will is said to be the product of undue influence when an adviser has been so importunate as to subdue the testator's will and free agency. *Longtin v. Witcher,* 352 So.2d 808, 811 (Miss.1977). Such may be accomplished through a variety of methods, such as advice, arguments, or

rebut the presumption of undue influence by clear and convincing evidence. (Adv. Dkt. No. 28-4, at ¶ 21) (insufficient testimony presented to overcome presumption of undue influence regarding deed, life insurance and bank accounts). Although the mere label of undue influence does not in and of itself constitute a non-dischargeable debt,[14] the Court is satisfied that the underlying factual findings of the Chancery Court establish that, under a preponderance of the evidence standard and from an objective standpoint, there was substantial certainty that Plaintiffs would be harmed by one or both Debtors actively procuring the execution of the decedent's Will, procuring a change in decedent's life insurance beneficiaries and being added to decedent's bank accounts, while depriving Plaintiffs from collecting their rightful share of the decedent's estate.[15]

The Chancellor did not make specific findings relating to the circumstances involving the transfer of the decedent's real property to the Debtors.[16]  The finding of undue influence as it relates to the deed was premised upon the failure of Debtors to rebut, by clear and convincing evidence, a presumption of undue influence that arose from the existence of a confidential relationship—because of the mere circumstance that Mildred Necaise, who was dying of cancer, was dependent upon the Debtors and shared a close relationship with them. *See* (Adv. Dkt. No. 28-4, at ¶ 8). In any event, the real property has been transferred to the heirs by the Administrator

---

persuasion. *Id.* However, not all influence exerted is undue. The influence must have been so overwhelming that the resulting instrument reflected the will of the adviser rather than the testator. *Greenlee v. Mitchell,* 607 So.2d 97, 105 (Miss.1992).
*In re Estate of Pigg*, 877 So. 2d at 411.

[14] Plaintiffs acknowledge that the judgment itself is insufficient to establish non-dischargeability but that the underlying factual findings equate to a non-dischargeable debt. (Motion ¶ VIII).

[15] Neither the contents of the Will nor the Will itself are before the Court.  Absent the probate of the Will, Plaintiffs would be entitled to a share of the decedent's estate pursuant to the Mississippi laws of intestate succession. *See* (Adv. Dkt. No. 28-4, at ¶ 17) ("This Estate shall be administered as an Intestate Estate.").

[16] Mildred Necaise executed a deed transferring certain real property to one or both Debtors. The judgment is unclear regarding the circumstances of the transfer. *Compare* (Adv. Dkt. No. 28-4, at ¶ 6) ("Mildred Necaise executed a Deed in favor of Garrett Necaise . . . .") *with Id.* at ¶ 7) (". . . Deed from Mildred Necaise to Garrett and Cynthia Necaise . . . .") *and Id.* at ¶ 13) (". . . Deed transferring her property to Garrett and Cynthia Necaise . . . .").

of Mildred Necaise's estate and there is no longer any "debt" regarding the real property to discharge.

Regarding the bank accounts, the Chancellor specifically found that Mildred Necaise had "no intention to transfer [] ownership of those accounts to Garrett Necaise, but rather those remain her accounts, which should be in her estate today." (Adv. Dkt. No. 28-4, at ¶ 8d). With regard to the bank accounts and life insurance policies, the Chancery Court found:

- that Decedent's position through the years was having all four of her children to equally divide her life insurance, as well her bank accounts. After the confidential relationship existed between Garrett and Cynthia Necaise with Decedent Mildred R. Necaise, she changed her life insurance beneficiaries to Garrett and Cynthia Neciase. Further she changed her bank account to show that Garrett Necaise was a joint owner with her.;

- that while Mildred R. Necaise was suffering with cancer and had symptoms[17] described above that she allegedly made a decision to exclude three of her four sons from her Estate, from her life insurance and from her bank accounts.; and

- that not only was the confidential relationship in existence, there was in fact undue influence. There was insufficient testimony presented to be able to overcome the presumption of undue influence regarding the deed, the life insurance and bank accounts.

*Id.* at ¶¶ 18, 20-21. The transfer of Mildred's bank accounts to Garrett Necaise was substantially certain to cause harm to Plaintiffs by removing the accounts from the purview of the decedent's estate. Likewise the change of beneficiaries deprived one or more of the brothers of their share of the insurance proceeds.[18]

---

[17] The Chancellor noted that the medical records showed that, at the time the beneficiaries were changed, the decedent was "shaky" and "could not eat," "was sick to her stomach, short winded, fatigued, nausea, fever, vomiting, indigestion, night sweats and appear[ed] tired." (Adv. Dkt. No. 28-4, at ¶¶ 18-20).

[18] At a status conference with the Court, evidence was discussed that indicates that prior to the undue influence, Garrett Necaise and one of his brothers, and not all four brothers, were the beneficiaries of at least one of the insurance policies. The setting aside of the transfer to Garrett simply restores the prior beneficiary designation and does not create any rights of the Estate in the insurance proceeds. Lee R. Russ et al., Couch on Insurance § 60.79 (3d ed. 2012) ("As a general rule, when an attempt to change a beneficiary in a life insurance policy or benefit

Regarding the Will, the Chancellor held that "there was more than a presumption of undue influence, there was *in fact undue influence*"[19] based upon the following facts:

a. Garrett Necaise arranged for the drafting of the Will.

b. The contents of the Will was between Counsel and Garrett Necaise. There was never a conversation between Counsel and Mildred R. Necaise.

c. Garrett Necaise picked up the Will from Counsel and delivered the Will to the Textatrix.

d. Garrett and Cynthia Necaise procured the witnesses, including the Decedent's sister.

e. Garrett and Cynthia Necaise procured the notary who notarized the signatures of the witnesses. In fact, the Notary was the brother-in-law of the Decedent. Garrett and Cynthia Necaise transported the witness and the Notary to the hospital for Mildred R. Necaise to sign. Garrett and Cynthia Necaise further procured the nurse at the hospital where Mildred R. Necaise was being treated for cancer.

f. Garrett and Cynthia Necaise kept the Will following its execution.

(Adv. Dkt. No. 28-4, at ¶ 15). The Chancellor also held that there was no independent action on the part of the decedent in the preparation of her Will; she did nothing except sign it. *Id.* at ¶ 16.

Certainly, under an objective standard it is more likely than not that by initiating the discussed transactions in order to obtain ownership of the insurance proceeds, the bank accounts, and bequests under the Will, one or both Debtors deprived Plaintiffs of their right to inherit their share of the decedent's estate. It is more likely than not that the Debtors knew that their actions

---

certificate has been unsuccessful, the prior beneficiary is entitled to the proceeds of the insurance, as his or her rights are unimpaired by the attempted change.").

[19] (Adv. Dkt. No. 28-4, at ¶ 16).

would deprive the Plaintiffs of their inheritance.[20] The factual findings underlying the Chancery Court judgment are sufficient to establish that the debts arising from the life insurance proceeds, bank accounts, and bequests under the Will are sufficient to establish the non-dischargeability of said debts; therefore, summary judgment should be granted as it relates to these claims.[21] However, since the real property has been returned to the heirs, it is unclear, what, if anything, Cynthia Necaise received as a result of undue influence, and therefore, summary judgment is denied as it relates to any claims against her. *See generally Alden v. Lewis*, 160 So. 2d 181, 182 (Miss. 1964) (no presumption of undue influence where person did not receive any benefit).

Although the Court is satisfied that the underlying factual findings of the Chancery Court support a finding of non-dischargeability as to some of the claims against Garrett Necaise under § 523(a)(6), the amount of each Plaintiff's claim is undetermined. The Chancery Court judgment merely states that "any assets that belong in this Estate that are tied up in the property of Garrett or Cynthia Necaise or that they have disposed of, need to be returned to the Estate and accounted for fully to the Estate. What the Court is talking about is the neighborhood of $70,000.00 worth

---

[20] *Compare Buchanan v. Scott (In re Scott)*, 227 B.R. 918 (Bankr. S.D. Ga. 1998) (state court undue influence judgment declared non-dischargeable on collateral estoppel grounds and alternatively upon the evidence where jury found defendant "actively procured" decedent's wealth to award judgment); *with Hamilton v. Hamilton (In re Hamilton)*, 480 B.R. 913, 916 (Bankr. N.D. Ind. 2012) (denying summary judgment; under Indiana law, finding of undue influence does not require proof of intent); *Cousatte v. Lucas (In re Lucas)*, No. 01-12092, 2002 WL 32667610, at *8 (Bankr. D. Kan. Dec. 5, 2002) (applying Kansas law) (dismissing non-dischargeability complaint; no collateral estoppel; finding of undue influence not equated to "willful and malicious" where evidence in state court action was that decedent never intended to leave any of her property to plaintiff and she expressed no desire to leave her properties to anyone in particular).

[21] The Chancery Court judgment notes in passing, without any discussion, "that there was undue influence regarding . . . any other *inter vivos* gifts that **may** have been given to Garrett or Cynthia Necaise, including but not limited to the transfer of ownership of the home that [the Decedent] did reside in, her automobile or Decedent's cause of action against Dupont." (Adv. Dkt. No. 28-4, at ¶ 22e) (emphasis added). It is unclear whether any *inter vivos* gifts were made. Therefore, summary judgment is denied as to "other *inter vivos* gifts."

of insurance, bank accounts and other financial matters."[22] The Court must hold a hearing to liquidate the claims.

**SO ORDERED.**

Katharine M. Samson
United States Bankruptcy Judge
Dated: August 28, 2013

---

[22] The Chancery Court also awarded attorneys' fees and ordered that Garrett Necaise to pay $12,258.92 into the decedent's estate.